## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CECIL FOWLER,**

      **Plaintiff,**

      **vs.**                                         **Civ. No. 15-307  KK**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14) filed September 23, 2015 in support of Plaintiff Cecil Fowler's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI supplemental security income benefits.  On December 7, 2015, Plaintiff filed his Motion to Reverse and Remand for Rehearing, With Supporting Memorandum ("Motion"). (Doc. 19.)  The Commissioner filed a Response in opposition on March 9, 2016 (Doc. 22), and Plaintiff filed a Reply on March 23, 2016.  (Doc. 23.)  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 9, 10.)

## I.  Background and Procedural Record

Claimant Cecil Fowler ("Mr. Fowler") alleges that he became disabled on May 1, 2010, at the age of fifty, because of failed back surgery, post traumatic stress syndrome, hepatitis C, manic depression, panic attacks, rheumatoid arthritis, and degenerative disc disease.  (Tr. 192, 196.[2])  Mr. Fowler completed two years of college in 1995 (Tr. 197), and has worked as a restaurant manager, carpenter, heavy equipment operator, office worker, pipe fitter/welder, sales person, shop hand, small engine mechanic, tech worker, and truck driver.  (Tr. 197-98, 229-45.)

On June 30, 2010, Mr. Fowler protectively filed[3] an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  (Tr. 161-67, 192.) Mr. Fowler's application was initially denied on January 19, 2011.  (Tr. 73-76.)  Mr. Fowler's application was denied again at reconsideration on May 31, 2011.  (Tr. 70, 82-85.)  On July 27, 2011, Mr. Fowler requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 86-88.) The ALJ conducted a hearing on September 24, 2013.  (Tr. 29-67.)  Mr. Fowler appeared in person at the hearing with attorney Michael Armstrong.  (Tr. 29.)  The ALJ took testimony from Mr. Fowler (Tr. 35-56), Lucille Fowler (Tr. 57-60), and an impartial vocational expert ("VE"), Diane Weber.  (Tr. 140-42.)

On September 27, 2013, the ALJ issued an unfavorable decision.  (Tr. 11-26.)   In arriving at her decision, the ALJ determined that Mr. Fowler had not engaged in substantial gainful activity since his alleged disability onset date.  (Tr. 16.)  The ALJ found that Mr. Fowler suffered from severe impairments of chronic low back pain/lumbago, left knee meniscal tear, and

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 14) that was lodged with the Court on September 23, 2015.

[3] Protective Filing Status is achieved once an individual contacts the Social Security Administration with the positive stated intent of filing for Social Security Disability benefits.  The initial contact date is considered a claimant's application date, even if it is earlier than the date on which the Social Security Administration actually receives the completed and signed application.  *See* 20 C.F.R. §§ 404.614, 404.630, 416.325, 416.340, 416.345.

mood disorder.  (*Id.*)  The ALJ found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18.)

Because she found that Mr. Fowler's impairments did not meet a Listing, the ALJ then went on to assess Mr. Fowler's residual functional capacity ("RFC").  The ALJ stated that

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he must be able to alternate sitting and standing approximately hourly; cannot perform kneeling, crouching, or crawling; should avoid exposure to hazardous workplace conditions; can make simple work related decisions with few workplace changes; and perform work requiring no more than occasional, superficial interaction with coworkers.

(Tr. 20.)  Based on the testimony of the VE, the ALJ concluded that considering Mr. Fowler's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Mr. Fowler could perform and he was therefore not disabled.  (Tr. 24-26.)

On February 25, 2015, the Appeals Council issued its decision denying Mr. Fowler's request for review and upholding the ALJ's final decision.  (Tr. 1-3.)  On April 16, 2015, Mr. Fowler timely filed a Complaint seeking judicial review of the Commissioner's final decision.  (Doc. 1.)

## II.  Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision[4] is supported by substantial evidence and whether the Commissioner applied the correct legal standards to evaluate the evidence.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

---

[4] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

In making these determinations, the Court must meticulously examine the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Thus, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court would have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). As

such, even if a reviewing court agrees with the Commissioner's ultimate decision to deny benefits, it cannot affirm that decision if the reasons for finding a claimant not disabled were arrived at using incorrect legal standards, or are not articulated with sufficient particularity. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "[T]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Id.* at 1009-10. Rather, the ALJ need only discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.*; *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).

### III. Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show that: (1) he is not engaged in

"substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[5] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."  20 C.F.R. § 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261.  If the claimant can show that his impairment meets or equals a Listing at step three, the claimant is presumed disabled and the analysis stops.  If at step three, the claimant's impairment is not equivalent to a listed impairment, before moving on to step four of the analysis, the ALJ must consider all of the relevant medical and other evidence, including all of the claimant's medically determinable impairments whether "severe" or not, and determine what is the "most [the claimant] can still do" in a work setting despite his physical and mental limitations.  20 C.F.R. § 416.945(a)(1)-(3).  This is called the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 416.945(a)(1) & (a)(3).  The claimant's RFC is used at step four to determine if he can perform the physical and mental demands of his past relevant work.  20 C.F.R. § 416.920(a)(4), 416.920(e).  If the claimant establishes that he is incapable of meeting those demands, the burden of proof then shifts to the Commissioner, at step five of the sequential evaluation process, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience.  *Id.*, *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359,

---

[5] 20 C.F.R. pt. 404, subpt. P. app. 1.

360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

## IV.   Analysis

Mr. Fowler asserts three arguments in support of reversing and remanding his case, as follows: (1) the ALJ impermissibly chose only those parts favorable to a finding of nondisability from State agency nonexamining medical consultant Dan M. Cox, Ph.D.'s opinion; (2) the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles and the testimony of VE Weber; and (3) the ALJ failed to articulate appropriate reasons for rejecting the opinions of certified nurse practitioners Nancy Brooker and Brett Curran. (Doc. 19 at 2, 12-24.) Because the Court finds grounds for remand as discussed below, the Court does not specifically analyze all of Mr. Fowler's arguments.

### A.   Pertinent Medical History

The medical record evidence supports that in October 1990 Mr. Fowler was diagnosed with a herniated disc at L4-5 centrally and L5-S1 spondylolisthesis. (Tr. 329-330.) On October 31, 1990, Mr. Fowler underwent a "[l]umbar decompression and total L4 and L5 laminectomies and bilateral discectomy at L4-5 level and posterolateral spine fusion from L4 to S1 with Luque ISF system with two six centimeter plates and six pedicle screws and right

posterior iliac crest bone graft."  (Tr. 331-35.)   The hardware from Mr. Fowler's 1990 back surgery was removed approximately six years later.  (Tr. 382, 401, 415.)  Mr. Fowler suffered subsequent work-related back injuries in 2000 and 2003.  (Tr. 401-02, 539.)

The medical record evidence also supports that Mr. Fowler was an established patient at the Presbyterian Medical Services Farmington Community Health Center ("Farmington Health Center") and received care and treatment for, *inter alia*, chronic lower back pain.  The earliest dated medical record from the Farmington Health Center in the Administrative Record is January 22, 2009, when Mr. Fowler presented to Nancy Brooker, CNP, for medication refills for chronic low back pain.  (Tr. 587.)  The record evidences that from January 22, 2009 until October 4, 2013,[6] Mr. Fowler presented almost monthly to the Farmington Health Center for pain management and medication refills.  (Tr. 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 587, 671-73, 674-76, 677-79, 680-82, 683-85, 686-88, 689-91, 692-94, 695-97, 698-700, 708-10, 711-13, 721-23, 724-26, 727-30, 731-32, 733-35, 736-37, 875-78, 887-91, 897-99, 913-15.)  Mr. Fowler received pain management care at Farmington Health Center from Frank Arnold, M.D., Nancy I. Brooker, CNP, and Theresa S. Ameri, CNP.  (*Id*.)

### B.    Other Source Evidence

Mr. Fowler argues that the ALJ failed to articulate adequate reasons for rejecting the medical opinions of certified nurse practitioners Nancy Brooker and Brett Curran.[7]  (Doc. 19 at 19-24.)  Specifically, Mr. Fowler argues that the ALJ's one reason; *i.e.,* that their opinions were not consistent with their own treatment notes, is conclusory and that the ALJ failed to evaluate

---

[6] The medical record evidence in the Administrative Record ends on October 4, 2013.  (Tr. 917-20.)

[7] Nancy I. Brooker, CNP, evaluated and managed Mr. Fowler's chronic pain and prepared a Medical Assessment of Ability To Do Work-Related Activities (Non-Physical).  (Tr. 770.)  Brett Curran, CNP, evaluated and managed Mr. Fowler's depression and prepared a Medical Assessment of Ability To Do Work-Related Activities (Mental). (Tr. 771-75.)

their opinions in accordance with the appropriate regulatory factors.   (*Id.* at 20.)   The Commissioner contends that the ALJ's findings are supported by substantial evidence because the nurse practitioners assessed limitations that were not well-supported by their treatment notes, which reflected that Mr. Fowler improved with medication and that his mental status exams were consistently normal.   (Doc. 22 at 8.)   The Commissioner contends that on this basis, the ALJs RFC assessment was supported by substantial evidence.   For the reasons discussed below, the Court finds that the ALJ failed to properly consider and evaluate CNP Brooker's other medical source opinion.[8]

The regulations state that all relevant evidence will be considered when making a determination about whether an individual is disabled.   20 C.F.R. § 416.927(b).   The regulations also contemplate the use of information from "other sources," both medical and non-medical, in making a determination about whether an individual is disabled.   *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 404.1513(d), 416.902, 416.913(d)). Recognizing the growth of managed health care in recent years and the increasing use of medical sources who are not technically "acceptable medical sources," SSR 06-03p states that

> medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinion from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

---

[8] Having found legal error as to the ALJ's consideration of CNP Brooker's assessment, the Court does not address CNP Curran's assessment.

SSR 06-03p, 2006 WL 2329939, at *3. Thus, evidence from other medical sources[9] and non-medical sources[10] may be used "to show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Id.*; *see* SSR 06-03p, 2006 WL 2329939, at *2. "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source'[11] for this purpose." SSR 06-03p, 2006 WL 2329939, at *2.

An ALJ is required to explain the weight given to opinions from other medical sources and non-medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6; *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that ALJ was required to explain the amount of weight given to other medical source opinion or sufficiently permit reviewer to follow adjudicator's reasoning). Although opinions from other medical sources and non-medical sources who have seen a claimant in their professional capacity cannot be given controlling weight, an adjudicator may determine that opinions from such sources are entitled to greater weight than a treating source medical opinion. SSR 06-03p, 2006 WL 2329939, at *6. The weight given to this evidence will vary according to the particular facts of the case, the source of the opinion, the source's qualifications, the issues that the opinion is about, and other factors, *i.e.,* how long the source has

---

[9] Other medical sources are nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapist. SSR 06-03p, 2006 WL 2329939, at *2.

[10] Non-medical sources include, but are not limited to, educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers; public and private social welfare agency personnel, rehabilitation counselors; and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers. SSR 06-03p, 2006 WL 2329939, at *2.

[11] "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1.

known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other facts that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5.

The ALJ failed to properly consider and evaluate CNP Brooker's assessment pursuant to SSR 06-03p. Here, the ALJ concluded that neither of the nurse practitioners' medical assessments were consistent with their own treatment notes and pointed to three example records that addressed Mr. Fowler's *depression*. (Tr. 24.) In so doing, the ALJ failed to distinguish that CNP Brooker's medical assessment specifically addressed Mr. Fowler's limitations affecting non-physical work activities due to *pain*. As such, the ALJ ignored evidence from CNP Brooker that demonstrated the severity of Mr. Fowler's chronic back pain and how it affects his ability to function. This was error. *Frantz*, 509 F.3d at 1302. Additionally, the ALJ failed to apply the appropriate regulatory factors in weighing CNP Brooker's assessment. Here, CNP Brooker treated Mr. Fowler for over three years; her assessment was consistent with State agency examining medical consultant Dr. Sandra Eisemann's opinion, whose opinion the ALJ accorded significant weight; and CNP Brooker presented treatment records and notes to support her assessment. *See* SSR 06-03p, 2006 WL 2329939, at *4 (listing factors to consider in evaluating other source opinion evidence). These factors are consistent with according more, not less weight to CNP Brooker's opinion. As such, the weight the ALJ accorded to CNP Brooker's medical assessment is not supported by substantial evidence. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118.

CNP Brooker was Mr. Fowler's primary health care provider at the Farmington Health Center. From January 22, 2009 until October 30, 2012, Mr. Fowler saw CNP Brooker *twenty-five* times for the purpose of assessing, treating, and managing his chronic pain related to his multiple back injuries and surgeries.[12] [13] (Tr. 578, 579, 580, 581, 582, 583, 584, 587, 671-73, 674-76, 677-79, 680-82, 683-85, 686-88, 689-91, 692-94, 695-97, 698-700, 708-10, 711-13, 721-23, 727-30, 731-32, 733-35, 736-37.) CNP Brooker typically saw Mr. Fowler every month to monitor his pain and refill his medications. (*Id.*) On May 6, 2011, Mr. Fowler reported that although his pain and function had been relatively stable, he had experienced a decline in his function over the past year due to increased pain and depression. (Tr. 733.) Mr. Fowler described his pain as constant, radiating, and disrupting his sleep. (*Id.*) He rated his pain on that date as a 7/10. (*Id.*) On physical exam, CNP Brooker noted decreased thoracic and lumbar mobility, spine tenderness, paravertebral muscle spasm, and positive straight leg raising tests. (Tr. 734.) CNP Brooker assessed lumbago and depression. (Tr. 735.) CNP Brooker refilled Mr. Fowler's morphine prescriptions, referred him to UNM rheumatology on indigent program,[14] referred him to Dr. Thompson at the San Juan Rehabilitation Center for chronic pain management, and provided him an enrollment packet for behavioral health services. (*Id.*)

---

[12] Mr. Fowler saw Dr. Arnold eight times over the same period of time. (Tr. 571, 572, 573, 574, 575, 576, 577, 724-26.) Mr. Fowler last saw Dr. Arnold on July 5, 2011. (Tr. 724-26.) Mr. Fowler saw Theresa S. Ameri, CNP, four times. (Tr. 875-78, 887-91, 897-99, 913-15.)

[13] In the body of her determination, the ALJ referenced only three records generated by CNP Brooker and cited specific statements from those records that highlighted evidence favorable to a finding of nondisability while ignoring evidence that would support a finding of disability. (Tr. 21.) This is error. *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (stating that in addition to discussing evidence supporting her decision, the ALJ must also discuss the uncontroverted evidence she chooses not to rely upon).

[14] Dr. Arnold had referred Mr. Fowler to UNM rheumatology on June 21, 2010, based on questionable MRI findings that suggested the presence of inflammatory arthritis. (Tr. 572, 597.) Mr. Fowler had not followed up due to a lack of income. (Tr. 733.)

Mr. Fowler's complaints regarding his pain persisted throughout his subsequent monthly visits.  (Tr. 732.)  For example, on June 17, 2011, Mr. Fowler reported his pain as 6/10. (Tr. 728.)  On physical exam, CNP Brooker noted bone and joint symptoms, muscle weakness, myalgia, and neck stiffness.  (Tr. 728-29.)  On July 29, 2011, CNP Brooker observed that Mr. Fowler had a positive antalgic gait and was in pain at rest.  (Tr. 722.)  On physical exam CNP Brooker noted that Mr. Fowler had pain with limited forward flexion at the hip.  (*Id.*)  On September 2, 2011, Mr. Fowler reported he continued to have joint and back pain.  (Tr. 677.)  On physical exam, CNP Brooker noted "[t]enderness over bilateral lower SI joints and thoracic spinous process and musculature."  (*Id.*)  On September 26, 2011, Mr. Fowler reported increased pain.  (Tr. 671.)  On physical exam, NP Brooker noted a positive antalgic gait and positive paravertebral muscular spasm.  (Tr. 672.)  On October 7, 2011, CNP Brooker noted thoracic spine tenderness and moderate pain with motion.  (Tr. 681.)  On March 5, 2012, Mr. Fowler reported to CNP Brooker that he had shoulder pain radiating into his bilateral thoracic area and lumbar back.  (Tr. 695.)  On physical exam, NP Brooker noted diffuse muscular tension and spasming on the posterior thoracic paravertebrals, and positive antalgic gait.  (Tr. 696.)   On August 27, 2012, Mr. Fowler reported increased pain in the evenings.  (Tr. 708.)  On physical exam, CNP Brooker noted diffuse skeletal and muscular pain over thoracic area.  (Tr. 709.)

CNP Brooker routinely prescribed morphine, Pamelor, and various muscle relaxants to treat Mr. Fowler's pain.  Also, in addition to the rheumatology and rehabilitation referrals, CNP Brooker noted that Mr. Fowler needed physiatry and physical therapy.  (Tr. 692, 693.)   She encouraged Mr. Fowler to contact UNM for a sliding scale program because he had no income.

(Tr. 692, 695.)   The records indicate that Mr. Fowler complied with most of the medication treatment.[15]

It was against this backdrop of care and treatment that CNP Brooker completed the Medical Assessment of Ability to Do Work-Related Activities (Non-Physical) on December 5, 2012.  (Tr. 770.)   Therein, she assessed how non-physical work activities would be affected by Mr. Fowler's pain.   (*Id*.)   She stated that (1) Mr. Fowler suffered from a pain producing impairment; (2) that he had sleep disturbances due to pain; (3) that he suffered fatigue due to his pain producing impairment; and (4) that he had to rest or lie down at regular intervals due to pain and fatigue.  (*Id*.)   She then assessed that Mr. Fowler had *slight* limitations in his ability to (1) maintain regular attendance and be punctual within customary tolerance; (2) to work in coordination with/or proximity to others without being distracted by them; and (3) to make simple work-related decisions.  (*Id*.)   She assessed that Mr. Fowler had *moderate* limitations in his ability to (1) maintain attention and concentration for extended periods (i.e. 2-hour segments); and (2) to perform activities within a schedule.   (*Id*.)    Finally, she assessed that Mr. Fowler had *marked* limitations in his ability to (1) maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently; (2) to sustain an ordinary routine without special supervision; and (3) to complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.   (*Id*.)   The medical record evidence supports that CNP Brooker assumed the greater percentage of the treatment and evaluation

---

[15] On March 18, 2009, Mr. Fowler reported he was unable to afford therapeutic body work.  (Tr. 583.)  On May 6, 2011, Mr. Fowler reported he had not followed up on rheumatology referral because he had no income.  (Tr. 733.) On June 3, 2011, Mr. Fowler had not started new medication Meloxicam because it was cost prohibitive.  (Tr. 731.) On October 7, 2011, Mr. Fowler had not started new medication Skelaxin due to the cost.  (Tr. 680.)  On January 6, 2012, Mr. Fowler reported that he had not followed up with Dr. Thompson at San Juan Rehabilitation Center due to finances.  (Tr. 686.)

function of Mr. Fowler's pain management.   As such, her findings and opinion – that Mr. Fowler's pain and fatigue caused moderate and marked limitations - are significant and should have been properly considered to determine the severity of and the impact on Mr. Fowler's ability to do non-physical work activities.  *See* SSR 06-03p, 2006 WL 2329939, at *3.

CNP Brooker's assessment was consistent with other opinion evidence.  Here, records from Dr. Sandra Eisemann (an acceptable medical source) support CNP Brooker's findings and opinion.  Dr. Eisemann, whose opinion the ALJ accorded significant weight (Tr. 23), concluded that the major deterrent to Mr. Fowler's functioning was his chronic pain.  (Tr. 605.)  She assessed that Mr. Fowler (1) could follow detailed instructions *if he were not in pain*;  (2) that *being in pain* would possibly interfere with complex instructions; and (3) that Mr. Fowler would need to be aware of his present *level of pain* in order to maintain good work habits.  (Tr. 605.) (Emphasis added.)  Dr. Eisemann ultimately recommended that

> [i]f this Claimant could locate a job in which he was not doing hard physical labor but could work with his hands such [as] a bicycle shop or work on cars in a manner that would not cause further back problems[,] he would be a candidate for at least part time employment *but would need accommodations such as breaks to rest his back and take his medications*.  . . .

(Tr. 606.)  (Emphasis added.)  Thus, Dr. Eisemann's assessment and recommendation supports CNP Brooker's assessment.

Finally, CNP Brooker's treatment records and notes present relevant evidence and support her findings and opinion based on her observations and treatment relationship with Mr. Fowler over the course of several years during the relevant time period.

For these reasons, the ALJ failed to apply the correct legal standards by ignoring CNP Brooker's medical assessment and by failing to apply the appropriate regulatory factors in

weighing her opinion. "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen,* 436 F.3d at 1165. Additionally, the weight the ALJ accorded to CNP Brooker's medical assessment is not supported by substantial evidence. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118. On remand, the ALJ should consider and evaluate CNP Brooker's findings and opinion as other medical source evidence pursuant to SSR 06-03p.

Finally, the ALJ's error is not harmless. Notably, the ALJ included exertional limitations related to Mr. Fowler's back pain; *i.e.,* light work except that he must be able to alternate sitting and standing approximately hourly and cannot perform kneeling, crouching, or crawling (Tr. 20). The ALJ also included nonexertional limitations; *i.e.,* Mr. Fowler can make simple work related decisions with few workplace changes; and can perform work requiring no more than occasional, superficial interaction with coworkers. (*Id.*) It is not clear, however, whether the nonexertional limitations in the ALJ's RFC determination were related solely to Mr. Fowler's depression or were also meant to account for his pain. *See* SSR 96-8p, 1996 WL 374184, at *6 (explaining that some symptoms, such as pain or fatigue, *inter alia*, are not intrinsically exertional or nonexertional and may cause both exertional and nonexertional limitations); *see also* SSR 95-5p, 1995 WL 670415, at *1 (considering allegations of pain and other symptoms in RFC). In any event, it is clear that the ALJ did not include nonexertional limitations to accommodate interruptions from pain or fatigue based symptoms – limitations assessed by CNP Brooker and supported by Dr. Eisemann's recommendation. If these limitations were incorporated into the ALJ's RFC, Mr. Fowler would be foreclosed from doing the representative jobs the VE identified and upon which the ALJ relied in finding Mr. Fowler not disabled. (Tr. 24-26, 66.)

The Court applies harmless error where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). That is not the case here.

### C.   Substantial Justification

The Commissioner bears the burden of proving that its position was substantially justified. *Kemp v. Bowen*, 822 F.3d 966, 967 (10th Cir. 1987). The test for substantial justification is one of reasonableness in law and fact. *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995). The government's position must be "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 US. 552, 565, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988). The government's "position can be justified even though it is not correct." *Hackett*, 475 F.3d at 1172 (quoting *Pierce*, 487 U.S. at 565.) A lack of substantial evidence on the merits does not necessarily mean that the government's position was not substantially justified. *Hadden v. Bowen*, 851 F.2d 1266, 1269 (10th Cir. 1988).

Here, the ALJ failed to apply the correct legal standards in considering other medical opinion evidence pursuant to SSR 06-3p. Additionally, the weight she accorded CNP Brooker's opinion is not supported by substantial evidence. For these reasons, the government's position was not substantially justified.

### D.   Remaining Issues

The Court will not address Mr. Fowler's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. <u>Conclusion</u>

For the reasons stated above, Mr. Fowler's Motion to Reverse or Remand for Rehearing is **GRANTED.** This matter is remanded for further proceedings consistent with the Court's findings.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding By Consent**